ORIGINAL

FILED
AUG 28 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

NORTHERN COLORADO WATER CONSERVANCY DISTRICT, a quasi-municipal entity and political subdivision of the State of Colorado

v.

No. 07-637 C

UNITED STATES OF AMERICA;
DIRK KEMPTHORNE, Secretary of Interior, in his official capacity;
ROBERT W. JOHNSON, Commissioner
Bureau of Reclamation, in his official capacity; and BUREAU OF RECLAMATION

COMPLAINT

1. The Northern Colorado Water Conservancy District ("Northern District") asks that this Court award it money damages and such other relief as may be appropriate as a result of the breach or non-performance by the United States of America of the requirements of the July 5, 1938 "CONTRACT BETWEEN THE UNITED STATES AND THE NORTHERN COLORADO WATER CONSERVANCY DISTRICT PROVIDING FOR THE CONSTRUCTION OF THE COLORADO-BIG THOMPSON PROJECT, COLORADO" ("1938 Repayment Contract").
2. The United States has waived its sovereign immunity and this Court has jurisdiction over this matter and the parties pursuant to 28 U.S.C. § 1491 (2006). This case has been filed within the applicable statutes of limitations.
3. The 1938 Repayment Contract is a valid and enforceable contract which was executed by Oscar L. Chapman, Assistant Secretary of the Interior, on behalf of the United States of America, under, *inter alia*, the authority of the Reclamation Act of 1902 (Act of June 17, 1902, 32 Stat. 388), 43 U.S.C. § 391 *et. seq*., as amended and supplemented, the laws generally styled "federal Reclamation Law," 43 U.S.C. § 371 *et. seq*., and the Act of

August 9, 1937; Pub. L. 75-249 (1937); 50 Stat. 564, 592, and 595. The 1938 Repayment Contract, as authorized by these statutory authorities, mandates the payment of the money to the Northern District which is at issue in this case.

4. The Northern District is a quasi-municipal entity and political subdivision of the State of Colorado which exercises the authority granted to it by C.R.S. § 37-45-101 *et. seq.*

5. This action has been authorized and directed by the Board of Directors of the Northern District, which has the authority to act on behalf of the Northern District under Colorado law.

6. The money damages sought by the Northern District from the United States of America are in excess of $10,000.00. Upon information and belief, the Northern District estimates that the money damages due to it are in excess of $100,000.00. The Northern District is not able to calculate with certainty the exact amount due to it under the 1938 Repayment Contract because the required records and data are within the control of Reclamation and not within the possession of the Northern District.

7. The Secretary of the Interior is named as a party, in his official capacity, because the 1938 Repayment Contract was executed on behalf of the United States of America by the office of the Secretary of the Interior.

8. The Commissioner of Reclamation is named as a party, in his official capacity, because the current Department Manual of the Department of the Interior delegates to the Commissioner authority regarding repayment contracts.

9. The Bureau of Reclamation ("Reclamation") is an agency of the United States Department of the Interior. Reclamation is named as a party because it has statutory and

delegated authority over federal Reclamation Projects, including the Colorado-Big Thompson Project ("C-BT Project").

10. The C-BT Project is a federal water project authorized by Congress. *See* Pub. L. 75-249 (1937); 50 Stat. 595.

11. The 1938 Repayment Contract defined, *inter alia*, the relationship between Reclamation and the Northern District relating to the construction and operation of the C-BT Project. The 1938 Repayment Contract is a valid and enforceable contract under federal law.

12. The 1938 Repayment Contract has been amended and supplemented on a number of occasions since its execution. Article 22 of the 1938 Repayment Contract was included in the original contract and remains unchanged today. Article 22 of the 1938 Repayment Contract provides:

> "Miscellaneous revenues arising out of use of project works facilities and other properties, subject to Article 18, shall be credited to the cost of construction of the project until such time as the final determination of construction costs has been made by the Secretary as provided in Article 6, and thereafter shall be credited equally to the District and the United States; provided, however, that all revenues derived from the carriage of other than project water through the Continental Divide Tunnel shall be the property of the District."

As of this date, the Northern District has completed all repayments for construction costs of the C-BT Project that were due under the 1938 Repayment Contract and the final determination of construction costs has been made by the Secretary.

13. In 1990, Reclamation entered into the "AMENDATORY CONTRACT FOR THE INTRODUCTION, STORAGE, CARRIAGE AND DELIVERY OF WATER FOR MUNICIPAL SUBDISTRICT, NORTHERN COLORADO WATER CONSERVANCY

DISTRICT, COLORADO-BIG THOMPSON PROJECT, COLORADO" with the Northern District and the Municipal Subdistrict, Northern Colorado Water Conservancy District ("Windy Gap Contract"). The Windy Gap Contract provides, *inter alia*, for the carriage of other than Colorado-Big Thompson Project water through the Continental Divide Tunnel, which is a component of the C-BT Project facilities.

14. The Windy Gap Contract complies with Article 22 of the 1938 Repayment Contract, and the United States has performed its obligations under Article 22 of the 1938 Repayment Contract since execution of and with respect to the Windy Gap Contract.

15. In September, 2001, Reclamation, the City of Loveland, Colorado, and the Northern District executed the "CONTRACT BETWEEN THE UNITED STATES OF AMERICA, THE CITY OF LOVELAND, COLORADO, THE NORTHERN COLORADO WATER CONSERVANCY DISTRICT, AND THE CITY OF LOVELAND, COLORADO, WATER ENTERPRISE FOR CONVEYANCE OF NONPROJECT MUNICIPAL AND INDUSTRIAL WATER THROUGH THE FACILITIES OF THE COLORADO-BIG THOMPSON PROJECT" ("Loveland Carriage Contract"). The Loveland Carriage Contract provides, *inter alia*, for the conveyance of water other than C-BT Project water through C-BT Project facilities.

16. This contract was specifically authorized by Congress:

> Sec. 208. Use of Colorado-Big Thompson Project Facilities of Nonproject Water. The Secretary of the Interior may enter into contracts with the city of Loveland, Colorado, or its Water and Power Department or any other agency, public utility, or enterprise of the city, providing for the use of facilities of the Colorado-Big Thompson Project, Colorado, under the Act of February 21, 1911 (43 U.S.C. 523), for--
> (1) the impounding, storage, and carriage of nonproject water originating on the eastern slope of the Rocky Mountains for domestic, municipal, industrial, and other beneficial purposes; and

> (2) the exchange of water originating on the eastern slope of the Rocky Mountains for the purposes specified in paragraph (1), using facilities associated with the Colorado-Big Thompson Project, Colorado.

Pub. L. 106-377, § 208 (2000).

17. Paragraph 5.a. of the Loveland Carriage Contract provides:

> The enterprise shall make…an annual payment…which…shall consist of the following:….A charge for construction cost of the [C-BT Project] facilities, including interest during construction and interest on the remaining balance. This construction cost component shall be $8.08 per acre-foot of conveyance and shall remain fixed for the term of the contract. These charges will be credited in accordance with the Act of February 21, 1911.

18. In the course of negotiation of the Loveland Carriage Contract the United States refused to honor Article 22 of the 1938 Repayment Contract. Accordingly, Paragraph 5.e. of the Loveland Carriage Contract provides that:

> The District and the Contracting Officer do not agree regarding the crediting of the payment by the Enterprise, on behalf of the City, for the construction cost of the facilities, set at $8.08 per acre-foot conveyed, as provided for in paragraph 5.a.(1) above (the "Construction Payment"). In order to allow this contract to be executed by all parties and implemented at the earliest possible date, the District agrees to having the Construction Payment credited to the United States in accordance with the Act of February 21, 1911 (hereinafter referred to as the "District's Agreement"). However, all parties agree that the District's Agreement does not in any way waive or prejudice the District's right or ability to seek and obtain a federal administrative, legislative or judicial determination of this issue. Finally, the United States agrees that, in the event that a final administrative or judicial decision, or Act of Congress, determines or directs that the Construction Payment should be credited in a manner different than that provided in Article 5.a.(1) above, this contract shall provide for crediting of the Construction Payment in accordance with such determination.

19. On March 23, 2007, Reclamation, the Town of Berthoud, and the Northern District executed the "CONTRACT AMONG THE UNITED STATES OF AMERICA, THE TOWN OF BERTHOUD, COLORADO, ACTING BY AND THROUGH ITS WATER

ENTERPRISE, AND THE NORTHERN COLORADO WATER CONSERVANCY DISTRICT, FOR EXCESS CAPACITY SERVICE OF NON-PROJECT MUNICIPAL AND INDUSTRIAL WATER THROUGH THE FACILITIES OF THE COLORADO-BIG THOMPSON PROJECT" ("Berthoud Carriage Contract"). The Berthoud Carriage Contract provides, *inter alia*, for the conveyance of water other than C-BT Project water through C-BT Project facilities.

20. In the course of negotiation of the Berthoud Carriage Contract, the United States refused to honor Article 22 of the 1938 Repayment Contract. Accordingly, Paragraph 5.c. of the Berthoud Carriage Contract provides that:

> The District and the Contracting Officer do not agree regarding the crediting of the excess capacity service charge for capitalized costs of Project facilities, set at $29.82 per acre-foot, as provided for in Article 5.a.(1). In order to allow this Contract to be executed by all Parties and implemented at the earliest possible date, the District agrees to have the excess capacity service charge for capitalized costs of Project facilities credited to the Reclamation Fund without a credit to the Project or Project contractors as provided for in the Department of the Interior Appropriation Act of May 9, 1938 (43 U.S.C. 392a). However, all Parties agree that the District's agreement does not in any way waive or prejudice the District's right or ability to seek and obtain a federal administrative, legislative or judicial determination of this issue. Finally, the United States agrees that, in the event that a final administrative or judicial decision, or Act of Congress, determines or directs that the excess capacity charge for capitalized costs of the Project facilities should be credited in a manner different than that provided in Article 5.a.(1), this Contract shall provide for crediting of the excess capacity service charge for capitalized costs of the Project facilities in accordance with such determination.

21. The Northern District believes that both Loveland and Berthoud have made the payments required by their respective Carriage Contracts. Reclamation has refused to pay to the Northern District money due to the Northern District under Article 22 of the 1938 Repayment Contract which has been collected by Reclamation pursuant to the Loveland Carriage Contract and the Berthoud Carriage Contract.

22. Additional carriage contracts will be negotiated in the future for the conveyance of water other than C-BT Project water through C-BT Project facilities. In particular, but without limitation, the Windy Gap Contract expires in 2025 and will be renegotiated then or sooner. Upon information and belief, the Northern District asserts that the money damages that would occur, if the United States were to refuse to honor Article 22 of the 1938 Repayment Contract with respect of this future contract will be in excess of $10,000.00.

23. Reclamation has, or should have, in its possession the records necessary to establish the amounts due to the Northern District pursuant to Article 22 of the 1938 Repayment Contract with respect to the Loveland Carriage Contract and the Berthoud Carriage Contract. The Northern District does not have these records, and has no way to independently establish the amounts due to it pursuant to Article 22 of the 1938 Repayment Contract.

**First Claim for Relief: Request for Money Damages**

24. Paragraphs 1 to 23 of this Complaint are incorporated herein.

25. The Northern District requests that this Court award to the Northern District money damages in the amount due to the Northern District pursuant to Article 22 of the 1938 Repayment Contract with respect to the Loveland Carriage Contract and the Berthoud Carriage Contract, plus interest.

**Second Claim for Relief: Accounting**

26. Paragraphs 1 to 25 of this Complaint are incorporated herein.

27. The Northern District requests that this Court order that Reclamation account for all credits, monies, or funds collected by or which should have been collected by

Reclamation pursuant to Article 22 of the 1938 Repayment Contract with respect to the Loveland Carriage Contract and the Berthoud Carriage Contract.

**Third Claim for Relief: Injunctive Relief**

28. Paragraphs 1 to 27 of this Complaint are incorporated herein.

29. The Northern District requests that this Court enter injunctive relief that prohibits Reclamation from violating in the future Article 22 of the 1938 Repayment Contract with respect to the Loveland Carriage Contract, the Berthoud Carriage Contract and any other contract which falls within the scope of Article 22 of the 1938 Repayment Contract, and which requires that Reclamation credit or otherwise pay to the Northern District all monies due to it under Article 22 of the 1938 Repayment Contract.

Wherefore, the Northern District requests that this Court award it money damages against the United States in the amount of the money collected by, or which should have been collected by, Reclamation pursuant to Article 22 of the 1938 Repayment Contract with respect to the Loveland Carriage Contract and the Berthoud Carriage Contract, or such other amount as the Court determines to be correct, and such other relief as is requested above or available and appropriate.

Dated: August 24, 2007.

TROUT, RALEY, MONTAÑO,
WITWER & FREEMAN, P.C.

By: Bennett W. Raley
Bennett W. Raley
Robert V. Trout
Peggy E. Montaño
1120 Lincoln Street
Suite 1600
Denver, Colorado 80203
Telephone: (303) 861-1963
Fax: (303) 832-4465